Argued and submitted March 21, 2014, reversed and remanded on Count 1, remanded for resentencing, otherwise affirmed December 30, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHAMAR DAVON GAINES,
*Defendant-Appellant.*

Jackson County Circuit Court
115245FE; A150698

365 P3d 1103

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F.

Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Egan, Presiding Judge, and Ortega, Judge, and De Muniz, Senior Judge.*

ORTEGA, J.

---

* Ortega, J., *vice* Armstrong, P. J.

## ORTEGA, J.

In this criminal appeal, defendant appeals a judgment of conviction for second-degree robbery, ORS 164.405(1)(b), raising five assignments of error.[1] We reject defendant's fourth and fifth assignments of error without further written discussion, and our resolution of the case based on defendant's third assignment of error obviates our need to address his second assignment of error. The state presented the jury with two competing theories by which defendant was liable for second-degree robbery: (1) as a principal or (2) under an accomplice liability theory by aiding and abetting his accomplice's commission of second-degree robbery. In his first assignment of error, defendant challenges the trial court's jury instructions on accomplice liability, asserting that, as a matter of law, he could not be liable on an aid-and-abet theory for second-degree robbery because his presence was "necessarily incidental" to the commission of the crime and, therefore, ORS 161.165(2) precludes accomplice liability. We conclude that defendant failed to preserve that argument. However, defendant's third assignment of error—challenging as plain error the court's failure to give a jury concurrence instruction—is well-founded, and, given the circumstances of this case, we exercise our discretion to correct the error. Accordingly, we reverse and remand on that basis.[2]

Because the jury found defendant guilty, we view the evidence presented at trial in the light most favorable to the state. *State v. Lotches*, 331 Or 455, 457, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). Two masked men entered The

---

[1] The jury found defendant guilty of second-degree robbery (Count 1) and second-degree theft (Count 2), but the trial court merged those guilty verdicts into a single conviction for second-degree robbery. Ultimately, we reverse and remand based on defendant's third assignment of error, which challenges the trial court's failure to give a jury concurrence instruction. That assignment of error does not implicate the jury's guilty verdict of second-degree theft.

[2] Because defendant's third assignment of error affords him the same or more relief than he would obtain if he succeeded on his first assignment of error, we normally would address only the third assignment. However, both assignments are uniquely related, and we are compelled to address his first assignment because if we were to agree with that theory, which invites us to hold that defendant could not be found guilty of second-degree robbery on an accomplice liability theory as a matter of law, there would be no need for the jury concurrence instruction that is the basis of his third assignment of error.

Adult Shop in Medford shortly after it opened one morning. The taller of the two—later alleged to be defendant—told an employee that she was being robbed and asked her to open the safe. The employee responded that, because the safe had a timer, it would not open for 10 minutes. Defendant instructed her to open the cash register, and, when she did, he took about $150 from it. Defendant then went outside to guard the door while the shorter man, who had a metal pipe concealed in his sleeve, waited for the safe to open. When the safe timer went off, the employee opened it and handed three money bags to the shorter man. The two men ran out of the store through an emergency exit, taking a total of about $800. A police investigation uncovered evidence that implicated defendant and his accomplice, Ellis.

A grand jury indicted defendant for second-degree robbery under ORS 164.405(1)(b) (a Class B felony) and second-degree theft under ORS 164.045 (a Class A misdemeanor). ORS 164.405(1)(b) provides, "A person commits the crime of robbery in the second degree if the person [commits third-degree robbery] and the person: * * * [i]s aided by another person actually present." As pertinent here, third-degree robbery is committed when "in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of" preventing or overcoming resistance to the taking of the property or compelling the property owner to deliver the property. ORS 164.395(1).

The case proceeded to trial. The state proceeded on the theory that the evidence established that defendant was the taller of the two masked men, and that defendant and his accomplice, by their words and conduct, implicitly threatened the immediate use of physical force on the store clerk during the commission of a theft. In particular, the state pointed to evidence that the men concealed their faces and used authoritative demands when asking the clerk to empty the safe and cash register, and that Ellis had a piece of metal pipe concealed in his sleeve. Defendant's theory was that the state had failed to prove that he was one of the masked men and, alternatively, that the state had failed to prove that anything in the conduct of defendant or Ellis

amounted to a threat of the immediate use of physical force upon another person.

At the close of evidence, the court and parties discussed the proposed jury instructions. The state requested, and defendant did not object to, a jury instruction on second-degree theft and an instruction on second-degree robbery. The state also requested Uniform Criminal Jury Instruction (UCrJI) 1051 (Criminal Liability for Conduct of Another Person):

> "A person who is involved in committing a crime may be charged and convicted of that crime if, with the intent to promote or facilitate commission of the crime, that person aids and abets someone in committing the crime. Under these circumstances, it is not necessary for that person to be personally present at the time and place of the commission of the crime[;]"

and UCrJI 1052 (Aid or Abet):

> "A person aids or abets another person in the commission of a crime if the person:
>
> "(1)  With intent to promote or make easier the commission of the crime,
>
> "(2)  Encourages, procures, advises, or assists, by act or advice, the planning or commission of the crime."

Defendant objected to UCrJI 1051 and UCrJI 1052, and proposed his own special instruction. Defendant's special instruction would have informed the jury that it could convict defendant of second-degree robbery only if it found that defendant, and not the "another person actually present," was the one who threatened the immediate use of physical force. That is, the jury could not convict defendant for second-degree robbery on an accomplice liability theory. The court rejected defendant's proposed special instruction and gave the jury UCrJI 1051 and UCrJI 1052. The jury found defendant guilty of second-degree robbery and second-degree theft, and the court merged the guilty verdicts and entered a judgment of conviction for second-degree robbery.

Defendant appeals, first assigning error to the trial court's jury instructions. We begin our analysis with preservation. Although the state does not contend that defendant

failed to preserve his first assignment, as a general rule, claims of error that were not raised before the trial court will not be considered on appeal. ORAP 5.45(1); *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). Because it is central to our preservation analysis, we recount in detail defendant's objection to the accomplice liability instructions.

When the court indicated that it was going to give the accomplice liability instructions, defendant objected on the basis of our decision in *State v. Rennells*, 213 Or App 423, 162 P3d 1006 (2007):

"THE COURT: Okay go ahead and make your objection on the record.

"[DEFENDANT]: It's—it's attached to my request for the other instruction. Basically the case that we've talked about a few times, State v. Rennells, in that case Rennells was convicted of a robbery in the second degree for his role as a getaway driver in a robbery case where he's about 25 feet away from an actual physical attack. In that case the court looked at the jury instructions that were given and determined that there was a harmful error and overturned Mr. Rennells' conviction. The trial court in that case gave [a second-degree robbery instruction.] * * * And then he further gave the Aided by Another Person Actually Present instruction. The defense asserted that the instruction should have required the jury find that Mr. Rennells used or threatened to use physical force himself as the principal actor and not as an aider and abettor based on the statute, ORS 164.405.

"Robbery in the second degree works sort of like assault in the third degree which requires that an individual have liability for violating the robbery. And in the third degree statute, the court looked back at the commentary to the Criminal Law Revision Commission proposed Oregon Criminal Code Final Draft and Report Sections 148 through 50 from July of 1970 and determined that the Commission intended this to apply only to the robber or the actor unless the individual charged with robbery in the second degree had to have at least principal liability for a violation of the robbery in the third degree statute. * * *

"In our case today, the taller suspect, who is alleged to be [defendant], doesn't carry any alleged weapons. They have charged him with a violator of the same subsection that

Mr. Rennells was charged with. The taller suspect made no explicit threats, did not have his hands in his pockets on the video, was polite, didn't seem to want to hurt anyone, just wanted to get out of there, never saw it, never touched them or saw any weapons and that his predominate job was to be the lookout. And thus we need to make sure that the jury understands that the taller suspect can only be convicted if he has liability as for aiding and abetting and a threat for being a part of a threat of use of immediate physical force. And that's why the defense is requesting the instruction that we submitted that's in the file. Basically if you find that [defendant] was involved in the incident you must find that he threatened the immediate use of physical force upon the alleged victims with the intent of compelling those individuals to deliver money. And so we're asking for that instruction that was filed and asking that the court not give the 1051, 1052 instructions that are requested by the State based on State v. Rennells."

(Underscoring in original.)

The problem with defendant's reliance on *Rennells* is that our analysis in that case was limited to the question of whether the defendant, who drove the getaway car after his accomplice stole a purse by force, could be *directly* liable for second-degree robbery by violating ORS 164.405(1)(b). 213 Or App at 435. We explicitly refused to address whether the defendant—who was "another person actually present"— could be held liable for violating ORS 164.405(1)(b) on an accomplice liability theory. *Id.* ("[T]his case, and our discussion that follows, pertains solely to a defendant's *direct* liability for violating ORS 164.405(1)(b). We appreciate that the term 'direct' may be somewhat imprecise, but we employ it in contradistinction to 'aiding-and-abetting' or 'accomplice' liability." (Emphasis in original.)). In *Rennells*, the defendant's argument was based on the premise that a person who "violates ORS 164.395"—the predicate to criminal liability for second-degree robbery under ORS 164.405—is only the person who "actually, physically engages in the conduct proscribed by ORS 164.395." *Id.* We agreed, concluding that, after analyzing ORS 164.405(1)(b) and its legislative history, the "another person actually present" cannot be *directly* culpable unless they actually engaged in the conduct that constitutes third-degree robbery. *Id.* at 439.

On appeal, perhaps realizing that *Rennells* is not particularly illuminating on the issue of accomplice liability in the circumstances presented in this case, defendant has shifted his argument to rely on ORS 161.165(2). He contends that, because the presence of at least one "aiding person" is "necessarily incidental" to the crime of second-degree robbery under ORS 164.405(1)(b), ORS 161.165(2) prevents that "aiding person" from being liable as an accomplice. ORS 161.165 provides:

> "Except as otherwise provided by the statute defining the crime, a person is not criminally liable for conduct of another constituting a crime if:
>
> "(1)   The person is a victim of that crime; or
>
> "(2)   The crime is so defined that the conduct of the person is *necessarily incidental thereto.*"

(Emphasis added.)

Essentially, defendant argues that ORS 161.165(2) precludes criminal liability for second-degree robbery as an "aider and abettor" because the conduct of an aider and abettor is "necessarily incidental" to that crime. Put another way, because second-degree robbery under ORS 164.405(1)(b) cannot be committed without "another person actually present," the presence of the other person is indispensable to that crime (*i.e.,* "necessarily incidental thereto"), and operation of ORS 161.165(2) precludes liability of the other person under an aid-and-abet theory. Accordingly, defendant argues that the instructions given were erroneous because they would have allowed the jury to find defendant guilty of second-degree robbery on either of two theories: (1) that he personally threatened the immediate use of physical force during the theft while being aided by Ellis (as "another person actually present") or (2) that he aided and abetted Ellis's threatened use of force during the theft.

Given the shift in defendant's position, the preservation issue is a close one. The purpose of preservation is "to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *State v. Whitmore*, 257 Or App

664, 666, 307 P3d 552 (2013) (internal quotation marks omitted). Thus, we will review an issue advanced by a party on appeal as long as that party provided "the trial court with an explanation of his or her objection that [was] specific enough to ensure that the court [could] identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction [was] warranted." *Wyatt*, 331 Or at 343. "[I]t is essential to raise the relevant issue at trial, but less important to make a specific argument or identify a specific legal source with respect to the issue raised." *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998).

As we recently stated in *State v. Blasingame*, 267 Or App 686, 691, 341 P3d 182 (2014), *rev den*, 357 Or 299 (2015):

> "Although there is some degree of liberality to the preservation requirement, the requirement is not meant to be 'a cursory search for some common thread, however remote, between an issue on appeal and a position that was advanced at trial.' Instead, when determining if an issue has been adequately preserved for review, the appropriate focus 'is whether a party has given opponents and the trial court enough information to be able to understand the contention and to fairly respond to it.'"

(Quoting *State v. Walker*, 350 Or 540, 552, 258 P3d 1228 (2011) (citations omitted).) We conclude that defendant did not do so here.

That is so because defendant's appellate challenge is "qualitatively different" from his objection at trial. *See id.* (holding that the defendant's appellate contention was qualitatively different from his exception at trial when at trial he had never referred to ORCP 59 E; instead, he had argued that the instruction was ambiguous). We acknowledge that the overarching legal principle presented by defendant in his requested special instruction—that an accomplice liability theory for second-degree robbery was unavailable in this case—is the same as his position on appeal. Nevertheless, the "common thread" between the position he advanced at trial and the issue he presents on appeal is too remote to give the trial court and the state enough information to have understood defendant's current argument based on ORS 161.165(2) and to fairly respond to it. When examining

the effect of ORS 161.165(2) on the availability of accomplice liability, a court must examine the statute defining the underlying crime, in this case ORS 164.405(1), to determine if the person's conduct is a "necessary part of the crime." *State v. Merida-Medina*, 221 Or App 614, 617, 191 P3d 708 (2008). Defendant's appellate contention that his presence as "another person actually present" is necessarily a part of second-degree robbery under ORS 164.405(1)(b) is qualitatively different from his argument below based on *Rennells*—a case that explicitly did not address accomplice liability and did not analyze ORS 164.405(1)(b) in the context of ORS 161.165(2). That is, the legal analysis required of the trial court to address defendant's objection based on *Rennells* is qualitatively different from the analysis defendant advances on appeal. Accordingly, defendant failed to preserve his first assignment of error.

Next, we consider defendant's third assignment of error, which, if well taken, is dispositive. He argues that the court committed plain error because it failed to give the jury a concurrence instruction requiring 10 of its members to agree on the same theory of his guilt. As noted, at trial, the state presented two competing theories of criminal liability for second-degree robbery: (1) that defendant was liable as a principal, or (2) that defendant was liable under an accomplice liability theory because he aided and abetted his accomplice's commission of second-degree robbery.

After the trial in this case, the Supreme Court issued *State v. Phillips*, 354 Or 598, 606, 317 P3d 236 (2013), which generally reaffirmed that "jury concurrence is required for each legislatively defined element necessary to impose criminal liability," and specifically addressed jury concurrence with respect to the competing theories of accomplice and principal liability. The court explained in *Phillips* that "the elements necessary to prove liability as an aider and abettor ordinarily will not be coextensive with the elements necessary to prove liability as a principal." *Id.* (citing *State v. Blake*, 348 Or 95, 101, 228 P3d 560 (2010)). "It follows that 10 jurors usually will have to agree on the elements necessary to prove that a defendant is liable for aiding and abetting another person's commission of a crime." *Id.* Accordingly, the court explained:

"[I]f the state seeks to hold a defendant liable as the principal or as an aider and abettor and if a party requests an appropriate instruction, the trial court should instruct the jury that at least 10 jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other."

*Id.*

Given *Phillips*, the trial court erred when it failed to give a jury concurrence instruction in this case. *See State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (holding that error, in general, must be determined by the law existing at the time the appeal is decided, and not as of the time of trial). However, defendant concedes that he did not preserve that error, so we must decide if it is reviewable as plain error and, if it is, whether we should exercise our discretion to correct it.

When an error is unpreserved, we can address it under ORAP 5.45(1) as "error of law apparent on the record" only if (1) the error is one "of law," (2) the point of law is "apparent," (*i.e.*, the point must be obvious, not reasonably in dispute), and (3) the error appears "on the face of the record," (*i.e.*, the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable). *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991).

With respect to instructional error, the Supreme Court and this court have generally held that "the question of what must be included in a jury instruction is a question of law, and what was or was not included is determined readily by examining the instructions that were given." *Lotches*, 331 Or at 472; *see State v. Gray*, 261 Or App 121, 129, 322 P3d 1094 (2014). Accordingly, for us to decide whether instructional error is plain error, our analysis is normally limited to determining whether the error was "obvious."[3]

---

[3] We note that the state argues that any error is not plain error because it is possible that a "defendant might not want such an instruction depending on his defense theory," such as when a concurrence instruction "might serve to focus the jury's attention on discrete factual occurrences that a defendant does not want emphasized." Although the state frames that argument as relevant to whether any error was "obvious," we understand the state's argument to be placed more

The state contends that any error is not obvious. To support that argument, the state mainly relies on the passing statement in *Phillips* that the trial court should give a jury concurrence instruction "if a party requests an appropriate instruction." 354 Or at 606. According to the state, the Supreme Court was indicating in *Phillips* that a trial court does not plainly err by failing to *sua sponte* provide a concurrence instruction when the defendant fails to request an "appropriate instruction."

We disagree. First, the Supreme Court was not addressing the availability of plain error review in *Phillips,* so we decline to adopt the state's rigid position that the court intended to preclude plain error review in such circumstances. Second, other pre-*Phillips* cases demonstrate that plain error review may be available when a court fails to give jury concurrence instructions. For example, in *Lotches,* where there was the potential to find the defendant guilty of multiple underlying felonies to support an aggravated murder charge, the court explained that, when a court fails to give a jury concurrence instruction that would require 10 jurors to agree on the material elements of a crime, all three elements of plain error are satisfied. 331 Or at 472. The court noted that it is obvious in Oregon that a jury must be instructed concerning the necessity of agreement on all material elements of a crime in order to convict. *Id.*; *see also Gray,* 261 Or App at 130 (concluding that trial court's instruction that omitted elements of the charged crime was plain error because it was an incorrect statement of the law);

---

properly within the framework applied by the Supreme Court in *State v. Gornick,* 340 Or 160, 130 P3d 780 (2006). In that case, the court concluded that a claimed error was not one appearing "on the face of the record" when the record supported competing inferences, including an inference that the defendant made a strategic decision not to object to allowing the trial court, rather than the jury, to find "aggravating facts" that supported an upward departure sentence. *Id.* at 170. Although we acknowledge that the possibility advanced by the state could hold true in certain cases, the state has not developed any specific argument that defendant in this case eschewed a concurrence instruction to avoid focusing the jury's attention on discrete facts. Accordingly, we decline to engage in a *"Gornick-*style inquiry" in this case. *See State v. Fults,* 343 Or 515, 520, 173 P3d 822 (2007) (opting to analyze potential strategic choice by defendant as part of decision of whether to exercise discretion to correct plain error, as opposed to whether there was any error at all). Instead, we address any possible inference that defendant made a strategic choice not to request a concurrence instruction in our analysis of whether to exercise our discretion to correct any error. *See id.* (same).

*cf. State v. Sparks*, 336 Or 298, 83 P3d 304, *cert den*, 543 US 893 (2004) (failure to give concurrence instruction regarding facts that were not obviously "essential to the crime" was not plain error). Nothing in *Phillips* appears to undermine the court's statement in *Lotches*.

After *Phillips*, it is "obvious" that, when the state advances competing theories of liability based on a defendant's acts as principal or as an aider-and-abettor—as the state did in this case—a jury must be instructed that at least 10 jurors must agree that the defendant is liable under one theory or the other. The instructions given in this case, combined with the evidence presented, would have allowed fewer than the required number of jurors to find defendant liable as a principal, and fewer than the required number of jurors to find him liable as an accomplice. *Cf. Phillips*, 354 Or at 606-08 (ultimately concluding that, in light of the facts of the case and the terms of the third-degree assault statute, the failure to give a jury concurrence instruction was harmless, because the only act that could have constituted aiding and abetting the infliction of physical injury under the accomplice liability statutes also constituted "causing" that injury within the meaning of the third-degree assault statute).

Given our conclusion that the claimed error is reviewable as plain error, we must decide whether to affirmatively exercise our discretion to correct the error. Factors that we consider in deciding whether to exercise that discretion include

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in a particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes*, 312 Or at 382 n 6. In addition, whether the defendant encouraged the judge's choice or whether there is a possibility that the defendant made a strategic choice not to object are relevant to our decision to exercise our discretion. *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007).

The state contends that we should not exercise our discretion because defendant could have avoided the problem by requesting the instruction, or moving to require the state to elect one theory over the other—essentially asserting that the purposes of preservation will be undermined if we exercise our discretion. Further, the state asserts that any error was not grave because there is little likelihood that jurors would have disagreed on a theory of liability given that the evidence strongly demonstrated that defendant was guilty as a principal by entering the store, "pretending to have a gun," and ordering the cashier to empty the safe and cash register. Defendant counters that the error is particularly grave because he was convicted of a serious felony based on a jury verdict where it is possible that the jury did not agree on all of the elements necessary to find defendant liable. Defendant also asserts that failing to require jury unanimity "undermines the most basic principles of the justice system."

Ultimately, in light of the unique circumstances of this case, we affirmatively exercise our discretion to correct the error, and reverse and remand to the trial court. We begin with the state's argument that defendant's failure to request a concurrence instruction deprived the state of the option of electing a theory of liability and, in that sense, the purposes of preservation are undermined if we exercise our discretion. The purposes of preservation include ensuring fairness to the parties in making and responding to arguments asserted in a case and efficient judicial administration. *Peiffer v. Hoyt*, 339 Or 649, 656, 125 P3d 734 (2005). Here, defendant's failure to seek a concurrence instruction deprived the state of the opportunity to elect a theory and the trial court of the opportunity to rule on whether such an instruction was appropriate. That concern is often present in the context of instructional plain error cases. And recently, in *Gray*, we recognized that problem and, nonetheless, exercised our discretion to correct plain instructional error when the defendant was challenging convictions for serious felonies, and the error was not harmless. 261 Or App at 132. In *Gray*, we exercised our discretion when the trial court failed to instruct the jury that it had to find that the defendant acted with the requisite culpable mental state

with respect to the element of forcible compulsion in a prosecution for first-degree rape and first-degree sexual abuse. We noted that the defendant could have avoided the problem by "simply requesting a further instruction, which militates against exercising our discretion." *Id.* Nevertheless, we concluded that, because the defendant's convictions were for serious felonies, and the error was not harmless, the gravity of the error compelled us to exercise our discretion to correct the error. *Id.*; *see also State v. Capote*, 266 Or App 212, 213, 337 P3d 858 (2014) (exercising discretion to correct plain instructional error for reasons stated in *Gray*); *cf. State v. Digesti*, 267 Or App 516, 525, 340 P3d 762 (2014), *rev den*, 357 Or 111 (2015) (declining to exercise discretion to correct plain instructional error where the error was harmless); *State v. Roy*, 275 Or App 107, 113-14, 364 P3d 1003 (2015) (declining to exercise discretion to correct plain instructional error because the defendant played a significant role in bringing about the alleged error and, given how the case was presented to the jury, we were not persuaded "that it [was] so likely that a sufficient number of jurors failed to reach the requisite concurrence" so as to justify the exercise of discretion).

Here, defendant was convicted of second-degree robbery—a serious felony—and sentenced to 70 months' imprisonment. The manner in which the jury was instructed would have allowed the jury to find defendant guilty of that felony as a principal or as an accomplice. Without a jury concurrence instruction, given the state's theory that defendant and Ellis implicitly threatened the immediate use of physical force and the equivocal evidence of those threats, we are not persuaded that a sufficient number of jurors concurred on a single theory of liability. That is, we disagree with the state's assertion that there is little chance that the jury disagreed that defendant was guilty of second-degree robbery on the theory of principal liability.

We also note that we perceive no plausible strategic reason for defendant's failure to seek a concurrence instruction. *See Fults*, 343 Or at 523 (possibility that the defendant made a strategic choice not to object is relevant to our decision to exercise our discretion to correct plain error). The state's suggestion that defendant may not have wanted

an instruction because he did not want to focus the jury's attention on discrete factual occurrences that he did not want emphasized finds no support in this record. Further, at the time of defendant's trial, whether a jury concurrence instruction was required when the state has presented competing theories of principal and accomplice liability was not as certain as it is after *Phillips.* Accordingly, we can discern no plausible inference that defense counsel strategically elected to not seek such an instruction on the off chance that the Supreme Court would later make the requirement for such an instruction "obvious" before our decision on defendant's appeal, thus, leading to a potential reversal based on plain error.

Notably, given our decision today, it may be permissible to draw an inference in future cases that a defendant who fails to seek a concurrence instruction in similar circumstances did so for strategic reasons. It may be plausible that a defendant in the future could decide not to seek a jury concurrence instruction for strategic reasons—essentially gambling that, if the defendant was convicted, a reviewing court would reach the error as plain error and reverse and remand the defendant's conviction. Although whether and when such an inference may be permissible is left for another case, we simply caution that our decision to exercise our discretion in this case is limited to the specific circumstances presented here, including the timing of defendant's trial and the Supreme Court's decision in *Phillips.*

Reversed and remanded on Count 1; remanded for resentencing; otherwise affirmed.