Submitted September 29, 2014, affirmed December 30, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AARON JAMES THOMPSON,
*Defendant-Appellant.*

Douglas County Circuit Court
12CR1630FB; A153006

365 P3d 1133

Peter Gartlan, Chief Defender, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael S. Shin, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

## EGAN, J.

Defendant appeals a judgment of conviction for third-degree assault, ORS 163.165(1)(e).[1] He assigns error to the trial court's failure to instruct the jury that it must concur on the facts establishing the elements of third-degree assault—that is, that defendant either directly caused physical injury to the victim with the aid of another person present, or his conduct was so extensively intertwined with that of the other person that he produced the victim's injury. Defendant did not request a jury concurrence instruction before the trial court and argues that we should review the matter as plain error. In light of *State v. Phillips*, 354 Or 598, 317 P3d 236 (2013), we conclude that the trial court did not err in failing to give the jury a concurrence instruction, because a jury concurrence instruction is required for each legislatively defined element necessary to impose criminal liability and, in this case, the jury was presented with two methods of proving a single element. Accordingly, we affirm.

Because the jury found defendant guilty, we view the evidence presented at the trial in the light most favorable to the state. *State v. Lotches*, 331 Or 455, 457, 17 P3d 1045 (2000).

Louis Borella, a volunteer caretaker at the River Forks Park, was performing his routine duty to close the park at sunset. Borella encountered two young men—defendant and his codefendant, Dawson—who had been rafting.

Borella told the two young men that he was getting ready to close the park and that they had to leave. Dawson responded that they were cold and waiting for a ride. Borella said that the only thing he could tell them was to start walking towards the gate where their ride could pick them up. Then one of the young men asked to use Borella's cell phone, and he refused. Borella said that there was nothing he could

---

[1] ORS 163.165 provides:

"(1) A person commits the crime of assault in the third degree if the person:

"* * * * *

"(e) While being aided by another person actually present, intentionally or knowingly causes physical injury to another * * *."

do about it because he had to close the park, and he turned around.

As Borella was walking away, he was watching defendant on his left side "jumping around" when someone hit him from behind. Borella fell to the ground and felt punches from "all over the place." He did not know who was hitting him. Borella recalls grabbing defendant's legs and swimming suit in an attempt to pull himself up, until he passed out. When he regained consciousness, defendant and Dawson were running away. Borella went to the emergency room for a scratch and bruises.

Defendant and Dawson were charged with third-degree assault, among other crimes.[2] Dawson pleaded guilty to the charge of third-degree assault. At trial, Dawson testified that, after Borella asked them to leave and would not allow them to use his cell phone, defendant asked him, "Do you want to hit him and run?" Dawson also testified that he "pushed * * * Borella to the ground and he jumped back up and punched me in the face, and I pushed him back to the ground. And then [defendant] starting hitting [Borella]."

Contrary to Dawson's testimony, defendant testified that he did not say anything about hitting Borella and running and that he was "speechless" when Dawson hit Borella in the side of his head. Additionally, defendant testified that, after Dawson first hit Borella, Borella tried to punch Dawson back, then Dawson "shoved [Borella] to the ground" and that is when Borella grabbed defendant's legs. Defendant testified that he told Borella to "let go" repeatedly, and that he pushed Borella's arms off because he was grabbing on to his legs, but that he did not "hit," "punch," "strike," or "kick" him. Defendant also testified that he called Dawson's name when Borella would not let go of his legs, Dawson hit Borella an unknown number of times, and defendant "took off running whenever he let go."

---

[2] Defendant was also charged with one count of menacing, ORS 163.190, and one count of obstructing governmental or judicial administration, ORS 162.235. At trial, the menacing charge was dismissed on the state's motion. The trial court granted defendant's motion for judgment of acquittal on the charge of obstructing governmental administration.

At trial, in closing, the state argued that, even if the jury found that defendant did not actually "personally" and "directly" cause some of Borella's injuries, his conduct was "so extensively intertwined with infliction of the injury," that he could still be guilty of third-degree assault:

> "There are two ways that we can reach assault three with regard to [defendant's] participation in that injury. First, after hearing all the evidence, you can find that [defendant] himself punched or kicked or somehow when he was trying to get Mr. Borella off him and he was just trying to crawl up and get away, that [defendant] himself personally, directly, caused some of those injuries. * * * Or if [defendant's] conduct was so extensively intertwined with infliction of the injury, even the ones caused by Mr. Dawson, that his conduct can be found to have produced the injury. Those are the two ways we get there."

With respect to the third-degree assault charge, the trial court instructed the jury:

> "Assault in the third degree. Oregon law provides that a person commits the crime of assault in the third degree if the person knowingly causes physical injury to a person while being aided by another person actually present. The person must have *inflicted the physical injury directly or his or her conduct must have been so extensively intertwined with the infliction of the injury that such conduct can be found to have produced the injury.*"

(Emphasis added.) Defendant did not request a concurrence instruction to distinguish whether defendant either directly caused physical injury to the victim with the aid of another person present, or his conduct was so extensively intertwined with that of the other person that he produced the victim's injury.

The state also argued that defendant could be convicted of a lesser-included offense, assault in the fourth degree, if the jury found defendant not guilty of assault in the third degree: "And for assault four that means that [defendant] didn't inflict any physical injury himself and was not intertwined but simply aided and abetted Mr. Dawson's assault of Mr. Borella." The jury was instructed accordingly, and the trial court explained the difference between assault in the third degree versus assault in the fourth degree.

Defendant did not request an aid and abet instruction as to the assault charges. The jury found defendant guilty of third-degree assault, and this appeal followed.

On appeal, defendant argues that the trial court plainly erred in failing to instruct the jury that it was required to concur on the factual basis for the elements of the charge of assault in the third degree. As mentioned, at trial, the state presented two methods to find defendant guilty of third-degree assault with regard to defendant's participation in the victim's injury: (1) that defendant directly caused injury to the victim with the aid of another actually present, or (2) that defendant's conduct was so "extensively intertwined" with the infliction of the victim's injury that defendant's conduct could be found to have "produced" the injury. As a result, the jurors could have concluded that either of those factual occurrences supported defendant's conviction for third-degree assault.

The state responds that the trial court did not err "because a defendant is entitled to a concurrence instruction only if he or she requests one, and defendant did not do so here." In the alternative, the state argues that, "[t]o the extent this court * * * considers defendant's claim, defendant's argument also fails on its merits" because *Phillips* does not apply and defendant's argument is instead foreclosed by [*State v. King*, 316 Or 437, 852 P2d 190 (1993),] and [*State v. Pine*, 336 Or 194, 82 P3d 130 (2003)]." For the reasons discussed below, we decline to address defendant's unpreserved assignment of error as plain error.

When an error is unpreserved, we will address it only if (1) the error is one "of law," (2) the point of law is "apparent," (*i.e.*, the point must be obvious, not reasonably in dispute), and (3) the error appears "on the face of the record," (*i.e.*, the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable). *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990) (internal quotation marks omitted).

First, the state contends that "[a] party is entitled to a concurrence instruction only if he or she asks for an appropriate instruction." Citing *Phillips*, the state argues

that *"Phillips* suggests that a trial court does not plainly err by failing *sua sponte* to provide a concurrence instruction on the state's theory of liability when a defendant fails to request an 'appropriate instruction.'" In *Phillips*, the Supreme Court concluded that,

> "if the state seeks to hold a defendant liable either as the principal or as an aider and abettor *and if a party requests an appropriate instruction,* the trial court should instruct the jury that at least 10 jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other."

*Id.* at 606 (emphasis added).

But, after the Supreme Court's ruling in *Phillips*, in *State v. Gaines*, 275 Or App 736, 365 P3d 1103 (2015), we rejected the state's argument that the trial court should give a jury concurrence instruction only "if a party requests an appropriate instruction." *Id.* at 746 (citing *Phillips*, 354 Or at 606). In *Gaines*, we held that plain error review is not precluded if a party does not request an appropriate concurrence instruction, because (1) "the Supreme Court was not addressing the availability of plain error review in *Phillips*, so we decline to adopt the state's rigid position that the court intended to preclude plain error review in such circumstances"; and (2) "other pre-*Phillips* cases demonstrate that plain error review may be available when a court fails to give jury concurrence instructions." *Id.* at 747. Therefore, we reject the state's argument that, as a threshold matter, plain error review is not available to defendant.

Nonetheless, we decline to review this matter as plain error because, in light of the Supreme Court's opinion in *Phillips*, there is no error. *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002) (whether error is "apparent" is determined by reference to law at the time the appeal is decided, not by the law at the time of proceedings in the trial court).

In *Phillips*, the court recognized that the two means to prove causation for purposes of ORS 163.165(1)(e) are alternative factual means to prove a single element, which does not require jury concurrence. 354 Or at 602. The court concluded that "the legislative determination that causation in ORS 163.165(1)(e) can be proved either by directly

inflicting an injury or by engaging in acts extensively intertwined with inflicting that injury does not violate either Article I, section 11, or the Due Process Clause." *Id.* at 613.

Principal and aider-and-abettor liability theories, which require jury concurrence, are inapposite to the facts of this case. Here, the state argued and the jury was instructed that there were two alternative factual means of proving that defendant "caused" the victim's physical injury. Therefore, because the state presented the jury with two alternative means of proving a single element of third-degree assault, under *Phillips*, the trial court was not required to *sua sponte* instruct the jury that it must concur on the facts establishing that element of third-degree assault.

In sum, the trial court did not err in failing to instruct the jury to concur on the facts that establish the elements of third-degree assault when the state alleges more than one factual theory of guilt to prove a single element.

Affirmed.