Submitted February 18, reversed and remanded October 5, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICHOLAS BOUNDEN WRIGHT,
*Defendant-Appellant.*

Washington County Circuit Court
C130906CR; A156811

383 P3d 385

Peter Gartlan, Chief Defender, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

## DEVORE, J.

Defendant appeals a judgment of conviction for one count of aggravated identity theft, ORS 165.803, 10 counts of identity theft, ORS 165.800, and one count of first-degree theft, ORS 164.055.[1] Defendant acknowledges that he did not preserve any of his five assignments of error but urges that we review them as plain error. ORAP 5.45(1). In his first assignment, defendant contends that the trial court erred in failing to give the jury a concurrence instruction requiring jurors to agree upon one of two theories of liability—that is, whether defendant was liable as principal or as an aider-and-abettor. We agree, and we exercise our discretion to correct the error. Given that conclusion, we need not reach defendant's other arguments. We reverse and remand.

"Because the jury found defendant guilty, we view the evidence presented at the trial in the light most favorable to the state." *State v. Thompson*, 275 Or App 985, 986, 365 P3d 1133 (2015) (citing *State v. Lotches*, 331 Or 455, 457, 17 P3d 1045 (2000)).

This case involves the unauthorized use of bank cards of several customers of Pizza Caboose. Defendant knew Sargent, a supervisor at the restaurant. In exchange for drugs, Sargent provided the names and account information of 10 customers. Sargent gave the information to either defendant or to Ingals, defendant's girlfriend at the time. A few days after using their cards at Pizza Caboose, the customers were alerted to, or noticed, unauthorized uses of their bank or credit card accounts. Among other things, their accounts had been used to load money onto Shari's restaurant gift cards. The gift cards were falsely registered under the names of three of the Pizza Caboose customers.

In the meantime, Shari's restaurant employees became suspicious that defendant was involved in criminal activity, and they made reports to Shari's corporate office.

---

[1] ORS 165.800 was amended twice since defendant's commission of the offenses. *See* Or Laws 2013, ch 158, § 34; Or Laws 2015, ch 158, § 25. ORS 164.055 was also amended. *See* Or Laws 2013, ch 24, § 11. Those amendments are immaterial, and, therefore, for ease of reference, our opinion cites to the current version of those statutes.

Defendant had engaged in unusual behavior at the restaurants, such as requesting to "split a tip with [a server] on the receipt,"[2] paying for food with gift cards with unusually large balances, purchasing a gift card for the amount of 25 cents, and using a gift card that had been registered in the name of another individual. While he sat at the lottery area in a Shari's restaurant, defendant used a gift card to pay for meals of other unknown individuals who had appeared at the restaurant. A manager made a 9-1-1 call, requesting that defendant thereafter be treated as a trespasser on the premises.

Defendant was arrested and charged with the 12 counts recited above. At trial, Ingals gave testimony that described defendant's role as more limited. She testified that Sargent gave her the customers' account information and that she, Ingals, had used their account information to transfer the customers' money to Shari's gift cards. Ingals testified that defendant had merely acted according to her direction in delivering drugs to Sargent and in picking up a gift card for 25 cents. She said that she had instructed defendant to use the gift cards but denied that he had any knowledge that the gift cards had been loaded with stolen money. Ingals said that she had sold some of the gift cards for "50 cents on the dollar."

During the state's closing argument, the prosecutor told the jury that the jury could find defendant guilty either as a principal or as someone who aided and abetted the commission of the crimes. *See* ORS 161.155(2)(b) (criminal liability for conduct of another, aiding and abetting). She emphasized:

"So even if you find that * * * Ingals was the mastermind of this whole thing, if you find that this defendant aided and abetted her and [in] any way encouraged her, advised her, assisted her, and by either his words or his action in any way, the planning or the commission of the crime, he is equally guilty for each and every one of those crimes.

---

[2] The server testified that defendant had asked if he could get cash back by leaving "a $4 tip and then split it with [her] so [she] would get $2 and he would get $2."

"So you can find that [defendant] is either the principal, which means that he, you know, in essence has masterminded this thing, or you can find that he aided and abetted Ms. Ingals and she was the principal, or the mastermind of this thing. Either one, he is liable, he is guilty."

The trial court also instructed the jury of the elements of defendant's liability for each charged offense, as both a principal and as an aider-and-abettor.[3] Defendant did not request an instruction, nor was one provided, that would have required the jury to concur as to whether defendant was the principal or aider-and-abettor. The jury found defendant guilty on all counts.

On appeal, defendant contends that the trial court erred in failing to offer a jury concurrence instruction, as required by *State v. Phillips*, 354 Or 598, 606, 317 P3d 236 (2013).[4] He acknowledges that his assignment of error lacks preservation, but he asks that this court review for plain error. The state responds that *Phillips* does not require a concurrence instruction in every case and that, alternatively, even if the trial court had erred in failing to provide the instruction, such error was harmless "because the evidence established that defendant committed those crimes as a principal."

We may review an unpreserved assignment of error as "an error of law apparent on the record" under ORAP 5.45(1) if certain conditions are met: (1) the error is one of law; (2) the error is "apparent"—that is, the legal point is obvious and is not reasonably in dispute; and (3) the error appears "on the face of the record"—that is, "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259

---

[3] The court instructed on the "criminal liability for conduct of another," on "aid and abet," and on "accomplice witness." As to aiding and abetting, the court instructed, in part, "A person aids or abets another person in the commission of a crime if the person, one, with the intent to promote or make easier the commission of the crime; two, encourages, procures, advises, or assists by act or advice, the planning or commission of the crime."

[4] Defendant's trial concluded on December 6, 2013. The court's decision in *Phillips* was published on December 27, 2013. Nonetheless, we determine error by the law existing at the time an appeal is decided. *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003).

(1990). Even where those conditions are satisfied, however, "we must determine whether to exercise our discretion to reach the error and correct it." *State v. Reynolds*, 250 Or App 516, 520, 280 P3d 1046, *rev den*, 352 Or 666 (2012) (citing *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991)). Among the factors that we consider in deciding whether to exercise our discretion are

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the polices behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes*, 312 Or at 382 n 6. We also consider "whether the defendant encouraged the trial court to make the error; whether the defendant made a strategic choice not to object; and whether the trial court could have corrected the error if the defendant had raised it below." *State v. Lusk*, 267 Or App 208, 212, 340 P3d 670 (2014) (citing *Reynolds*, 250 Or App at 521).

     In this case, we agree with defendant that a failure to provide a concurrence instruction was legal error that is apparent in the record in light of *Phillips*. 354 Or at 601. In that case, the Supreme Court held that, where a defendant could be found guilty either as a principal or an aider-and-abettor, the concurrence instruction was necessary to assure that the jury concurred on a theory of criminal liability. *Id.* at 612-13. In *Phillips*, the victim had sustained a broken bone around his eye during a fight with the defendant and the defendant's friend. The defendant was charged with third-degree assault. Although there was no dispute that the defendant had hit the victim, there was a dispute regarding the role that the defendant had played in causing the victim's injury. *Id.* at 601. The trial court declined to give the defendant's requested jury instruction that would have "told the jury that 10 jurors had to agree whether defendant was liable for third-degree assault either because he hit the victim or because he aided and abetted the person who did." *Id.* The jury found the defendant guilty of third-degree

assault. On review, the Supreme Court held that the trial court erred in refusing to give the requested instruction. The court explained that

> "10 jurors usually will have to agree on the elements necessary to prove that a defendant is liable for aiding and abetting another person's commission of a crime. Put differently, if the state seeks to hold a defendant liable either as the principal or as an aider and abettor and if a party requests an appropriate instruction, the trial court should instruct the jury that at least 10 jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other."

*Id.* at 606. The court concluded, however, that that error was harmless because "the factual findings necessary to find defendant liable on one theory either subsumed or were the same as the factual findings on the other theory." *Id.* at 613. In sum, there is no doubt that, "when the state advances competing theories of liability based on a defendant's acts as principal or as an aider-and-abettor—as the state did in this case—a jury must be instructed that at least 10 jurors must agree that the defendant is liable under one theory or the other." *State v. Gaines*, 275 Or App 736, 748, 365 P3d 1103 (2015); *see also Phillips*, 354 Or at 612-13 ("The requirement recognized in [*State v. Boots*, 308 Or 371, 379, 780 P2d 725 (1989),] and reaffirmed in [*State v. Pipkin*, 354 Or 513, 516-17, 316 P3d 255 (2013),] that at least 10 jurors must agree on each legislatively defined element of a crime means that 10 jurors ordinarily must agree whether a defendant committed a crime him or herself or, alternatively, whether the defendant aided and abetted another person's commission of that crime.").

We turn to the alleged error and the particular offenses in this case. Defendant was indicted on 11 counts of identity theft, or aggravated identity theft, all of which are predicated on a violation of ORS 165.800, which provides, in part, that "[a] person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person." Defendant was also indicted on one count of first-degree theft predicated on a violation of ORS 164.015(1), which

provides, in pertinent part, that "[a] person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person[,]" among other things, "[t]akes, appropriates, obtains or withholds such property from an owner thereof[.]"[5]

Based on the evidence presented at trial, a reasonable juror could have determined that defendant was criminally liable as a principal or as an aider-and-abettor. For example, if the jury accepted Ingals's testimony that she obtained the account information and that defendant had merely acted according to her direction, it could have permissibly found defendant liable as an aider-and-abettor. Conversely, if the jury did not accept Ingals's testimony, it could have found defendant criminally liable as a principal.[6] It follows that the instructions that were provided by the trial court, together with the evidence, would have allowed fewer than the required number of jurors to find defendant liable under either theory. That was error.

Nonetheless, the state urges that the error is not plain. The state does not dispute the rule in *Phillips*, but the state contends that *Phillips* does not require a trial court to provide a concurrence instruction *sua sponte* "when a defendant fails to request an 'appropriate instruction.'" (Quoting *Phillips*, 354 Or at 606.) We have already rejected that same argument, and we do not revisit it again in this case. *Gaines*, 275 Or App at 747 (declining to "adopt the state's rigid position that the court [in *Phillips*] intended to preclude plain error review" and rejecting the state's argument that plain error review was unavailable); *see also Thompson*, 275 Or App at 990 (rejecting state's argument that, "as a threshold

---

[5] We note that defendant was not charged with theft by receiving. ORS 164.095 ("A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft."). And, "although 'actions *after* the commission of a crime * * * may be used as evidence that earlier activities were aiding and abetting,' those actions 'cannot alone constitute aiding or abetting.'" *State v. Wilson*, 240 Or App 475, 488, 248 P3d 10 (2011) (quoting *State v. Moriarty*, 87 Or App 465, 468 n 1, 742 P2d 704, *rev den*, 304 Or 547 (1987) (emphasis in original)).

[6] We reject without discussion the state's argument that, "in order to convict defendant as an accomplice *only*, the jury would have had to conclude that defendant intentionally aided and abetted Ingals's thefts without benefitting from the thefts himself." (Emphasis in original.)

matter, plain error review is not available" when defendant did not request an instruction). As before, we conclude that the error is plain. *Gaines*, 275 Or App at 748.

The remaining question is whether we should exercise our discretion to correct the error in this case. The state contends that we should not exercise our discretion to correct any error because defendant may have had strategic reasons for not requesting an instruction. The state emphasizes that defense counsel informed the trial court that the jury instructions "look[ed] fine." That argument is not persuasive because defendant's trial occurred before publication of the court's decision in *Phillips*. Accordingly, defense counsel did not have the benefit of the clarity that the case would provide to the extant case law. It is implausible that defendant "strategically elected to not seek such an instruction on the off chance that the Supreme Court would later make the requirement for such an instruction 'obvious' before our decision on defendant's appeal, thus, leading to a potential reversal based on plain error." *Gaines*, 275 Or App at 751. As a consequence, concerns about any disregard for preservation are reduced.[7] Further, we have previously concluded that, where a defendant's convictions reflect serious felonies, and an error was not harmless, "the gravity of the error compel[s] us to exercise our discretion to correct the error." *Id.* at 750 (citing *State v. Gray*, 261 Or App 121, 129, 322 P3d 1094 (2014)); *see also State v. Pervish*, 202 Or App 442, 465-66, 123 P3d 285 (2005), *rev den*, 340 Or 308 (2006) (exercising discretion to correct plain error, in part, because convictions reflected serious felonies). For the reasons expressed in those cases, we exercise our discretion to correct the error here.

Reversed and remanded.

_____

[7] We pause to observe, as we did in *Gaines*, that

"it may be permissible to draw an inference in future cases that a defendant who fails to seek a concurrence instruction in similar circumstances did so for strategic reasons. It may be plausible that a defendant in the future could decide not to seek a jury concurrence instruction for strategic reasons— essentially gambling that, if the defendant was convicted, a reviewing court would reach the error as plain error and reverse and remand the defendant's conviction. * * * [W]hether and when such an inference may be permissible is left for another case[.]"

275 Or App at 751.