Argued and submitted September 24, 2021; decision of Court of Appeals and judgment of circuit court affirmed October 6, 2022

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOHN ANDREW SHEDRICK,
*Petitioner on Review.*

(CC 17CR79342) (CA A167795) (SC S067620)

518 P3d 559

Defendant was charged with first-degree theft, and the state's evidence at trial showed that defendant had taken a bundle of money amounting to $2,000 that was atop an automated teller machine in a bar. Defendant argued that the state had to prove, but had not proved, that defendant was at least criminally negligent with respect to his awareness of the value of the money that he took. Defendant also requested special jury instructions to that effect. The trial court denied defendant's motion for a judgment of acquittal and did not give the jury defendant's requested instructions. The jury convicted defendant as charged, and the Court of Appeals affirmed. *Held*: (1) In a prosecution for first-degree theft, the state must prove the defendant's culpable mental state with respect to the value of the property stolen; (2) the trial court therefore erred in failing to give the requested instructions; but (3) the error was harmless because the evidence reflected that defendant's failure to be aware of the substantial and unjustifiable risk that the money that he had taken was worth a significant amount was a gross deviation from the standard of care that reasonable people would exercise.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

On review from the Court of Appeals.*

Neil Byl, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

E. Nani Apo, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____
  * On appeal from Lane County Circuit Court, Charles M. Zennaché, Judge. 302 Or App 380, 457 P3d 1117 (2020).

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

NAKAMOTO, S. J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

** DeHoog, J., did not participate in the consideration or decision of this case.

### NAKAMOTO, S. J.

Defendant took a bundle of money atop an automated teller machine, or ATM, and was convicted of first-degree theft. As defined in ORS 164.055(1)(a), the offense requires the state to prove, among other things, that the "total value of the property" stolen in the transaction "is $1,000 or more." The issue on review is whether proof of a culpable mental state concerning the "value of the property" element is required. The trial court and the Court of Appeals agreed with the state that none is required. Defendant challenges the judgment of conviction, arguing that the jury should have been instructed that, to obtain a conviction, the state had to prove his culpable mental state—at least criminal negligence—concerning the value of the money taken. We allowed review and, for the reasons that follow, hold that, in a prosecution for first-degree theft, the state must prove the defendant's culpable mental state with respect to the value of the property stolen and that the trial court erred in failing to give the requested instructions. However, we conclude that the error was harmless and, therefore, affirm the decision of the Court of Appeals and the trial court's judgment of conviction.

## FACTS AND PROCEDURAL HISTORY

Defendant walked into a bar and sat at a video poker machine near the ATM that the bar maintained for customers. The bar's owner was about to refill the ATM and placed a bundle of currency on top of it. The bundle consisted of 100 $20 bills; a currency strap from the bank, which certified that the bundle contained $2,000, held the bills together. Within two or three seconds, while the owner had turned around to greet a patron who had entered the bar, defendant took the bundle of money, placed it in his jacket pocket, and walked toward the door. A bar patron saw defendant take the bundle and stopped him before he could leave. Defendant said "sorry," handed the bundle to the patron, and pleaded with him to let him go. The patron declined and returned the money to the bar owner. The sequence of events occurred rapidly, in a matter of seconds. The patron did not know how much money was in the bundle.

The bar owner asked for someone to call the police, and he and the patron made sure that defendant did not leave before the police arrived. The responding officer saw the bundle of money, which was resting on the bar, but did not know its value immediately. He then was told the amount and looked at the bank band around the bundle indicating that it contained $2,000.

The state charged defendant with theft in the first degree, ORS 164.055(1)(a). At the close of the state's case, defendant moved for a judgment of acquittal, arguing, based on *State v. Simonov*, 358 Or 531, 368 P3d 11 (2016), that one of the elements that the state was required to prove, but had not proved, was that defendant was at least criminally negligent with respect to his awareness of the value of the money that he took. Defendant also requested special jury instructions to that effect.[1]

The state opposed the motion and objected to defendant's requested instructions. It argued that, under Court of Appeals precedent—specifically, *State v. Jones*, 223 Or App 611, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009)—the state was not required to prove knowledge or any other culpable mental state as to the property's value in a theft case.

Although defendant expostulated that *Jones* did not address whether a culpable mental state other than knowledge attached to the value element of theft, the trial court disagreed. Concluding that the Court of Appeals had held that no mental state was required for that element, the trial court denied the motion for a judgment of acquittal and instructed the jury on the elements of first-degree theft without including a culpable mental state as to the

---

[1] Defendant's first requested instruction set out the culpable mental state that would apply: "[Y]ou must find he was negligently unaware that the value of the property stolen was valued at $1,000.00 [or] more." His second instruction explained, borrowing from the statutory definition of "criminal negligence" in ORS 161.085(10), that "negligently unaware" meant the failure "to be aware of a substantial and unjustifiable risk that the property stolen was valued at $1,000.00 or more. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of [care] that a reasonable person would observe in the situation." The third instruction explained that, if the state proved that defendant "intended, knew or was reckless as to the property being valued at $1,000.00 or more," then the state's burden to prove negligence would be satisfied.

value of the money taken. The jury was instructed that the state had to prove beyond a reasonable doubt that defendant, "with the intent to appropriate property to himself, knowingly took property, cash, from the owner *** and a total value of that property was $1,000 or more." Defendant excepted to the court's failure to give his requested special jury instructions.

After the jury found defendant guilty, he challenged his conviction on appeal. In part, he asserted that the trial court had erred by failing to instruct the jury that the "criminal negligence" culpable mental state applied to his awareness of the value of the money taken. The Court of Appeals affirmed in a per curiam decision, citing *Jones* and several of its more recent decisions, including *State v. Morales*, 299 Or App 392, 450 P3d 552 (2019). *State v. Shedrick*, 302 Or App 380, 457 P3d 1117 (2020). We allowed defendant's petition for review, limited to the question of whether a culpable mental state attaches to the "value of the property" element of first-degree theft under ORS 164.055(1)(a).

## ANALYSIS

Whether the legislature intended ORS 164.055(1)(a) to include a culpable mental state for the "value of the property" element of first-degree theft is an issue resolved by statutory construction. *State v. Owen*, 369 Or 288, 295, 505 P3d 953 (2022). Our analysis of the first-degree theft statute requires consideration of the statute's text, context, and legislative history. *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). And as we explained in *Owen*, the culpability statutes enacted in 1971, through which the legislature "intended to provide a uniform statutory scheme for determining which elements of an offense require which culpable mental states," provide important instruction for evaluating what culpable mental states, if any, the legislature intended to attach to the elements of a criminal offense, like first-degree theft, that is defined in the Criminal Code. 369 Or at 295, 317.

The parties contest whether the state had to prove any culpable mental state for the property-value element by initially focusing on the meaning of one of those general culpability statutes, ORS 161.095(2). That statute provides

that, to obtain a conviction, the state must prove that the defendant "acts with a culpable mental state with respect to *each material element of the offense that necessarily requires a culpable mental state*." ORS 161.095(2) (emphasis added). Defendant contends that the emphasized text requires a culpable mental state for elements of an offense other than those pertaining to venue, jurisdiction, and statutes of limitation. The state contends that "material element" in ORS 161.095(2) already excludes "elements such as venue and jurisdiction." Thus, the state reasons, the qualifying phrase—"that necessarily requires a culpable mental state"—refers to other elements of an offense and so might not encompass the property-value element of the theft offense.

That same dispute about the meaning of ORS 161.095(2) arose in *Owen*, and we resolved that dispute after the parties had briefed and argued this case. In *Owen*, we rejected the argument that the state advances in this case about the meaning of ORS 161.095(2). We explained that the statute ordinarily requires the state to prove a mental state for any "material element" of a criminal offense defined by a statute in the Oregon Criminal Code that "necessarily requires" a culpable mental state. 369 Or at 295; *accord State v. Rutley*, 343 Or 368, 373, 171 P3d 361 (2007). We held that, as used in ORS 161.095(2), the legislature intended a "material element" of the offense to refer to any fact that "the state is legally required to prove to beyond a reasonable doubt to convict a defendant, including facts about the statute of limitations, venue, and jurisdiction." *Owen*, 369 Or at 309-10. We further held that the phrase "that necessarily requires a culpable mental state" clarifies that no culpable mental state is necessary for "material elements relating to when and where a crime could be prosecuted, like the statute of limitations, jurisdiction, and venue." *Id.* at 310.

Applying that statutory requirement in ORS 161.095(2), it would appear that the state would be required to prove a culpable mental state as to the property-value element of the theft offense. As defendant correctly argues, that element is a material element, and it is not an element like venue or other elements pertaining to when or where an offense may be prosecuted that would obviate the need to prove a culpable mental state.

Taking a contrary position, the state posits that, even if ORS 161.095(2) generally requires a culpable mental state for an element like the value of the property stolen, this court has recognized that to strictly apply such a requirement to every offense defined in the Criminal Code may conflict with what the legislature intended to require for a particular offense. According to the state, the legislature intended the offense of theft to be an exception to ORS 161.095(2). Citing *State v. Irving*, 268 Or 204, 520 P2d 354 (1974), and its reading of the legislative history of the statutes defining theft offenses, the state urges us to hold that the legislature intended to omit any culpable mental state for the property-value element of theft offenses.

Courts may recognize exceptions to ORS 161.095(2) or other general culpability statutes, but to establish such an exception, a party must show a legislative intent to disregard the statute. In *Irving*, this court concluded that, despite the mandate in ORS 161.095(2) requiring proof of a culpable mental state for material elements of an offense, it was "clear from the legislative history" of the statute defining the criminal offense of fraudulent sale of imitation drugs that the legislature did not intend to require the state to prove a culpable mental state for a material element, namely, that the defendant "knew that he was making a sale to a peace officer." 268 Or at 206.

And more recently, in *State v. Carlisle*, 370 Or 137, 515 P3d 867 (2022), a majority of this court concluded that the legislature did not intend to require the state to prove that the defendant, who was charged with sexual abuse, knew that the victim had not consented to sexual contact. In the lead opinion, three justices agreed that legislative history revealed uncertainty about whether the legislature viewed—or would have viewed—the "does not consent" element as a "conduct" element that generally requires knowledge as the minimum applicable culpable mental state. *Carlisle*, 370 Or at 155-56 (Flynn, J., lead opinion); *see also* ORS 161.085(8) (defining "knowingly" or "with knowledge" as applied to conduct elements). Those justices also concluded that that uncertainty, coupled with contextual evidence of the legislature's intent, established that the legislature did not intend to require the state to prove the

defendant's knowledge of the victim's nonconsent. *Carlisle*, 370 Or at 166.

The decisions in *Irving* and *Carlisle* underscore that the party asserting that a general culpability statute in ORS chapter 161 does not apply must show that the legislature intended to disregard that statute when it crafted the statute defining a specific offense. In *Irving*, the state presented evidence that, when the legislature prohibited the sale of imitation drugs, it intended to countermand ORS 161.095(2), the statute requiring a culpable mental state for the element at issue. 268 Or at 206. And in the case of *Carlisle*, the state presented both legislative history for the crime of sexual abuse and contextual evidence related to that statute to demonstrate that the legislature did not intend to require the state to prove that the defendant knew that the victim did not consent to sexual contact. 370 Or at 156 (Flynn, J., lead opinion).

In this case, the state argues that the legislative history of the theft statutes establishes that the Criminal Code's drafters—and subsequently the 1971 Legislative Assembly that enacted the code—did not intend that the state must prove that a defendant acted with a culpable mental state with respect to the value of the property stolen. The state's primary argument is that the Criminal Law Revision Commission's silence on the matter is compelling:

"The Commission members specifically discussed the requirement that the state prove the value of the property in order to convict a defendant of the higher degrees of theft, and what would happen if it were unable to do so. Tape Recording, Criminal Law Revision Commission, April 27, 1968, Tape 13, Side 1. But despite thoroughly discussing how the state must prove the value of stolen property to support a conviction for second-degree or first-degree theft, the Commission members did not once mention having to prove any culpable mental state on the part of defendant. That legislative history, especially in the context of the larceny statute that existed at the time, supports the conclusion that the legislature did not contemplate that the state would be required to prove any culpable mental state as to that element."

The state does not refer us to legislative materials other than the commission's meeting on April 27, 1968, but it asserts that the discussion of the subcommittee that drafted the theft statutes bolsters the state's position.

Accordingly, we turn to the text, context, and legislative history of the first-degree theft statute to discern whether the legislature intended to have courts and litigants disregard ORS 161.095(2) requiring the state to prove that the defendant acted with a culpable mental state with respect to material elements of offenses, other than those relating to venue and the like. In particular, we examine whether the drafters and, ultimately, the legislature intended the first-degree theft statute to contain no culpable mental state for the property-value element. We conclude that the evidence fails to support that conclusion.

Separate statutes define the differing degrees of theft. *See* ORS 164.043 (third-degree); ORS 164.045 (second-degree); and ORS 164.055 (first-degree). Pursuant to ORS 164.055(1)(a), theft in the first degree is defined, in part, as follows: "A person commits the crime of theft in the first degree if, by means other than extortion, the person commits theft as defined in ORS 164.015" and the "total value of the property in a single or aggregate transaction is $1,000 or more[.]" A person commits theft as defined in ORS 164.015(1) when the person, "with intent to deprive another of property or to appropriate property to the person or to a third person, * * * [t]akes, appropriates, obtains or withholds such property from an owner thereof[.]"

The text of ORS 164.055(1)(a) does not contain an express determination by the legislature that no culpable mental state is required for the elements of first-degree theft. Nor does the text suggest or imply that the legislature decided to except first-degree theft from the usual statutory requirement it provided in ORS 161.095(2).

As for context, the state makes a two-part argument. First, according to the state, before the 1971 adoption of the overhauled Oregon Criminal Code and the consolidation of theft-related crimes, the crime of larceny, as defined in *former* ORS 164.310 (1967), *repealed by* Or Laws 1971, ch 743, § 432, provided for a separate determination of the value

of the property taken, to be made *after* a finding of guilt, for purposes of punishment. The state thus suggests that *former* ORS 164.310 (1967) did not require proof of the value of the stolen property to obtain a conviction; the value was relevant only in determining the appropriate punishment for the crime. From that premise, the state then argues that the first-degree theft offense that the commission drafted and that the legislature adopted in 1971 was designed to retain that separation of the property-value determination from the factfinder's role to determine whether the state has proved the elements of the theft offense. We are unpersuaded.

The crime of larceny was defined, in part, as follows:

"(1)    Any person who steals the property of another, or who wilfully takes, carries, leads or drives away the property of another with the intent to deprive such other of such property permanently, is guilty of larceny; and

"(a)    If such property exceeds $75 in value, shall be punished upon conviction by imprisonment in the penitentiary for not more than 10 years.

"(b)    If such property does not exceed $75 in value, shall be punished upon conviction by imprisonment in the county jail for not more than one year, or by a fine of not more than $500, or both."

*Former* ORS 164.310 (1967).

Although the text of *former* ORS 164.310 (1967) could suggest that the initial premise of the state's argument is correct, case law indicates that proof of the value of the property was in fact an element of the crime of larceny. In *State v. Lewis*, 248 Or 217, 219-20, 433 P2d 617 (1967), this court held that, "to prove that the offense was grand larceny," the state had to establish the value of the stolen property, which could be done through the owner's testimony as to value. In other words, the court considered the value of the property to be a material element of the crime of grand larceny necessary for the state to prove to secure a conviction. The same conclusion can be drawn from *State v. Grinolds*, 223 Or 68, 353 P2d 851 (1960). In that case, this court analyzed whether, under a habitual criminal act, the defendant's conviction of larceny in Minnesota would be

considered a felony in Oregon that could be counted against the defendant in assessing a habitual criminal penalty. 223 Or at 73-78. The court held that, because the statute defining felony larceny in Minnesota required taking property worth more than $25 but the statute defining felony larceny in Oregon required taking property worth more than $75, the defendant's Minnesota conviction could not be counted as a felony larceny conviction in Oregon. *Id.* at 78.

In addition, the legislative history of the commission's consideration of the draft of the theft statutes indicates that the members of the commission contemplated that the state would have to prove the stolen property's value to convict a defendant of grand larceny. At the April 1968 meeting of the Criminal Law Revision Commission on which the state relies, the full commission addressed Article 14, the theft provisions, as contained in Preliminary Draft No. 4. The commission addressed all sections of the draft, and for approximately 15 minutes it discussed section 8, pertaining to the value of property. In its discussion of section 8 of the draft, the commission briefly addressed what would happen if the state failed to establish that the property value was over $75 in a grand larceny case. Tape Recording, Criminal Law Revision Commission, Apr 27, 1968, Tape 13, Side 1. A commission member explained that he knew from practice that the judge would instruct the jury on the lesser included offense of petty larceny. *Id.* Another member agreed and then wondered whether crimes involving credit cards might be different, and a third member interjected that there would be a separate section drafted related to credit cards. *Id.* The subcommittee then turned to section 9 of the draft relating to defenses to theft. *Id.* That discussion further undermines the state's argument that *former* ORS 164.310 (1967) did not require the state to prove the value of the property stolen to convict a defendant of larceny and that the commission likewise intentionally excluded the value of the property stolen as one of the elements of theft.

Turning to the state's reliance on silence in the legislative history of ORS 164.055(1)(a), we agree with the state that the drafters did not mention a culpable mental state with respect to the value of the property taken. Nowhere in its discussion of the property-value provisions on April 27,

1968, did the commission members make any comment indicating that the state was required to prove that the defendant had a culpable mental state with respect to the value of the stolen property. Nor did the subcommittee's discussions contain affirmative statements that a culpable mental state would apply to the value of the property.

But, by the same token, the members of the commission and the subcommittee members responsible for drafting and presenting the theft provisions to the commission never mentioned that the state *need not prove* a culpable mental state with respect to the value of the property taken. *See* Tape Recording, Criminal Law Revision Commission, Apr 27, 1968, Tape 13, Side 1. Thus, that legislative history is far from clearly indicating that the legislature intended to depart from the statutory requirement in ORS 161.095(2) for criminal liability: With statutory exceptions not relevant here, "a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element" of the offense, other than those elements like venue and jurisdiction.

The commission's and the subcommittee's lack of discussion concerning a culpable mental state requirement for the value of the property stolen is not surprising, considering the text and purpose of section 8 of the draft theft provisions concerning the value of stolen property. Preliminary Draft No. 4 stated that "the value of property shall be ascertained as follows" and then contained three subsections concerning valuation:

"(1)   Except as otherwise specified in this section, value means the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime.

"(2)   Whether or not they have issued or delivered, certain written instruments, not including those having a readily ascertainable market value, should be evaluated as follows:

"(a)   The value of an instrument constituting evidence of debt, including, but not limited to, a check, draft or promissory note, shall be deemed the amount due or collectible thereon or thereby.

"(b)   The value of any other instrument which creates, releases, discharges or otherwise affects any valuable legal right, privilege or obligation shall be deemed the greatest amount of economic loss which the owner might reasonably suffer because of the loss of the instrument.

"(3)   When the value of property cannot reasonably be ascertained, it shall be presumed to an amount less than one hundred dollars."

Preliminary Draft No. 4, Criminal Law Revision Commission, Article 14 (Apr 18, 1968) at 16. The commentary to section 8 concerning the value of the property in the theft offenses informed the subcommittee and the full commission that it served to define the "criteria to establish value." Commentary to Preliminary Draft No. 4 at 16 ("This section sets forth three criteria to establish value."). The final draft of the proposed Criminal Code did the same. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 131, 138-39 (July 1970).

The commission's discussion tracked the draft's provisions on ascertaining the value of stolen property. The commission initially focused on how the value of stolen property should be calculated. The chair of the subcommittee that had drafted the theft provisions, Senator John D. Burns, informed the commission that the Model Penal Code (MPC) provided that the value of stolen property is calculated using the "highest value by any reasonable standard," whereas subsection (1) provided that the value was to be determined based on market value, borrowing from New York's law. Tape Recording, Criminal Law Revision Commission, Apr 27, 1968, Tape 13, Side 1. When a commission member asked whether the draft would change how Oregon would establish the value of stolen property, another answered that it would not change existing case law but would be included in the statute. *Id.* The commission briefly addressed subsection (2) concerning valuation of instruments. *Id.* With respect to subsection (3), the provision that, if the value could not "reasonably be ascertained it shall be presumed to be an amount less than one hundred dollars," the commission was told that the provision was to take care of cases in which proof of the property's value was

not established. *Id.* A member referred to the value elements of larceny and explained that he knew of cases in which the prosecution failed to prove the value of the property taken and the trial court concluded that all the elements of larceny were not proved and that a motion for judgment of acquittal was well taken. *Id.* The commission eventually decided to replace "one hundred dollars" with a blank placeholder instead, to be filled in following a determination of penalty provisions. *Id.* Thus, the commission members did not affirm or disclaim that the state would have to prove a culpable mental state with respect to the value of the property. At the end of the meeting, no commission members expressed concerns about the general approach to the theft offenses after being invited to do so. *Id.*; Minutes, Criminal Law Revision Commission, Apr 27, 1968, 15-16.

Similarly, the subcommittee's discussion of the value of the stolen property focused on valuation. The subcommittee first discussed the theft offenses in February 1968. The discussion of the value of the stolen property was limited to reading and describing the effect of the draft. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Feb 24, 1968, Tape 5, Side 1. The subcommittee met again in March to consider the theft statutes as set out in Preliminary Draft No. 2 and reviewed the section concerning the value of stolen property. Minutes, Criminal Law Revision Commission, Subcommittee No. 1, Mar 23, 1968, 9. The subcommittee discussed how to determine the value of stolen property, noting the difference between the MPC's use of the "highest value by any reasonable standard" as the criterion and "reasonable market value" in the draft. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Mar 23, 1968, Tape 6, Side 2. The subcommittee also discussed valuations of instruments, approving related modifications to the draft, and the "presumption" that, without proof of the value of stolen property, only a conviction of petty larceny was possible. *Id.* At its April 1968 meeting, the subcommittee approved the section concerning the value of stolen property as drafted, with no substantive discussion. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Apr 6, 1968, Tape 11, Side 1; *see also* Minutes, Criminal Law

Revision Commission, Subcommittee No. 1, Apr 6, 1968, 11. The subcommittee did not discuss a culpable mental state with respect to the value of the property.

But although the drafters did not discuss a culpable mental state, the legislative history does not provide clear evidence for the conclusion that the state offers. The drafters' silence about a defendant's culpable mental state concerning the property-value element of theft during the discussions about how to prove the value of property is unsurprising and does not clearly reflect an intention by them or the legislature to omit the need for the state to prove a culpable mental state for the property value, a material element of the offense. Following our decision in *Owen*, we hold that, by virtue of ORS 161.095(2), the legislature intended a culpable mental state to apply to the property-value element of theft.

Accordingly, the Court of Appeals erred in holding, in this case and in *Jones*, *Morales*, and similar cases, such as *State v. Stowell*, 304 Or App 1, 466 P3d 1009 (2020), that no culpable mental state applies to the property-value element of first-degree theft. As a result, the trial court, following the Court of Appeals case law, erred in declining to give defendant's requested jury instructions requiring the state to prove a culpable mental state as to the value of the property taken. However, we nonetheless affirm the decision of the Court of Appeals in this case and the judgment of conviction entered by the trial court, because the error in instructing the jury was harmless.

As is evident from defendant's requested jury instructions, defendant contends that the applicable culpable mental state for the value of the property taken is criminal negligence. He contends that the property-value element is a "circumstance" element, an "accessory fact that accompanies, not modifies, the defendant's conduct." *Simonov*, 358 Or at 542. Defendant further contends that the legislature intended the state to prove at least that he was criminally negligent regarding the "value of property" element, because "circumstance" elements normally require the state to prove that the defendant acted knowingly, recklessly, or with criminal negligence as to the circumstance. *Id.* at 539-40; *see also* ORS 161.085(7) - (10) (definitions of

mental states); ORS 161.115(3) (when criminal negligence suffices to establish a culpable mental state, the mental state may also be proved by knowledge or recklessness). The state agrees that, if the property-value element requires a culpable mental state, then that element is a "circumstance" element with a required culpable mental state of criminal negligence. In light of the parties' arguments, we assume, without deciding, that the applicable culpable mental state for the property-value element is criminal negligence.[2]

As we have discussed, the jury was not instructed that it had to find that defendant was criminally negligent with respect to his awareness of the amount of the money that he took to find him guilty of first-degree theft, and we conclude that the court's failure to give an instruction on the culpable mental state was error. However, notwithstanding that error, we will affirm the judgment below if we determine that "there was little likelihood that the error affected the verdict." *Owen*, 369 Or at 323 (so stating); *State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003) (same).

Assuming a culpable mental state of criminal negligence, the state was required to prove that defendant acted

---

[2] The parties do not discuss whether ORS 161.115(1) or ORS 161.115(2) applies to the determination of which culpable mental state governs the property-value element of first-degree theft, but they appear to assume that ORS 161.115(2) applies. Those two subsections of ORS 161.115 provide the following guidance:

"(1) If a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state.

"(2) Except as provided in ORS 161.105, if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

First-degree theft is defined in ORS 164.055 as "theft as defined in ORS 164.015," committed under certain enumerated circumstances, including, as applicable here, when the value of the amount taken is $1,000 or more. ORS 164.055(1)(a). That provision contains no culpable mental state, and, therefore, ORS 161.115(2) suggests that the applicable mental state for the crime of first-degree theft is at least criminal negligence. However, ORS 164.015, which defines "theft," prescribes an intentional culpable mental state: "A person commits theft when, with intent to deprive another of property," the person commits certain enumerated acts. It could be argued that the reference to the theft statute prescribes an intentional mental state that should apply to all elements of the crime of first-degree theft. *See* ORS 161.115(1) (prescribed mental state applies "to each material element of the offense that necessarily requires a culpable mental state").

with criminal negligence with respect to his awareness of the value of the property taken—here, that the value of the bundle of money was $1,000 or more. "Criminal negligence" means that a person "fails to be aware of a substantial and unjustifiable risk that *** the circumstance exists." ORS 161.085(10). "The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." *Id.*

We agree with the state that there is little likelihood that the error affected the verdict. Jurors with common knowledge about ATMs, including the kinds of denominations of bills typically in an ATM, and about the interests of a bar owner in maintaining the cash levels in the ATM for customers to use it, would have understood that the circumstances indicated a substantial risk that a large amount of money, at least $1,000, was in the stack. Assuming that the jury would have concluded that defendant nevertheless was unaware of that risk, the jury would then have to consider the nature of the risk and whether defendant's failure to be aware of it was a gross deviation from the standard of care that a reasonable person would observe in that situation. On that question, defendant argues that the evidence reflects that he took the money quickly and that he and others did not know from looking at the bundle from a distance how much money was in it or what amount was printed on the bank band. But that argument goes more to defendant's lack of knowledge of the exact amount of the cash rather than to the substantial risk that the amount was significant. The evidence reflected that, before he took the cash, defendant sat near the ATM in a video poker area and watched the bar owner prepare to fill the ATM with a sizeable bundle of cash, specifically 100 bills secured with a bank band. In view of that evidence, defendant's failure to be aware of the substantial and unjustifiable risk that the cash was worth a significant amount, at least $1,000, was a gross deviation from the standard of care that reasonable people would exercise. For those reasons, we conclude that the trial court's error in failing to give defendant's requested jury instructions requiring the state to prove that he was criminally negligent with respect to the value of the property taken

had little likelihood of affecting the verdict and therefore was harmless.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.