No. 497 July 17, 2024 797

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES SEKOU JONES,
*Defendant-Appellant.*

Washington County Circuit Court
20CR42436; A176173

Erik M. Bucher, Judge.

Submitted June 20, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Shawn Wiley, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Convictions on Counts 5 and 6 reversed and remanded; remanded for resentencing; otherwise affirmed.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction for two counts of second-degree robbery (Counts 5 and 6).[1] *See* ORS 164.405(1)(b) ("A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person * * * * * [i]s aided by another person actually present."); ORS 164.395(1) ("A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle * * * the person uses or threatens the immediate use of physical force upon another person[.]"). On appeal, he raises four assignments of error. In his first and second, he argues that the trial court erred when it did not enter judgments of acquittal on the two counts of second-degree robbery, because the state did not prove that defendant personally committed the robbery while aided by another person. In his third, he argues that the trial court plainly erred when it failed to instruct the jury that it could not find him guilty of second-degree robbery on an aiding-and-abetting theory. In his fourth, he argues that the trial court plainly erred when it did not instruct the jury that all members must agree whether defendant was guilty as the principal or accomplice.

We conclude that defendant's first and second assignments of error are unpreserved, and that the trial court did not plainly err when it did not *sua sponte* enter judgments of acquittal. However, on defendant's fourth assignment of error, we conclude that the trial court plainly erred when it did not give a concurrence instruction that required the jury to agree about the legal basis for defendant's guilt. Accordingly, we remand for a new trial on Counts 5 and 6. Finally, because the record could develop differently on remand, we do not reach defendant's third assignment of error.

The colloquial description of this case is that of "a drug deal gone wrong." Through Snapchat, defendant arranged to meet J in the parking lot of an apartment

---

[1] Defendant was also convicted of unauthorized use of a vehicle (ORS 164.135), but he does not raise any challenges on appeal to that conviction. Defendant was acquitted on the remainder of the counts in the indictment, specifically: two counts of robbery in the first degree (ORS 164.415), two counts of robbery in the second degree (ORS 164.405), and two counts of unlawful use of a weapon (ORS 166.220(1)(a)).

complex to purchase drugs. Defendant brought his brother, and J brought a friend, A. J and A drove to the apartment complex, and when they arrived, defendant and his brother got in the back seat of the car. In the middle of the drug purchase, one of the men in the backseat grabbed J around the chest from behind, in something "like a choke hold," and held something to J's ribs that A thought was a gun. The men told J and A that they wanted the drugs and directed them to leave their belongings in the car and get out. J and A complied. The men took the car and drove away. J and A borrowed a cellphone from a bystander and called 9-1-1. Law enforcement officers found J's car in the parking lot of a nearby apartment complex, where defendant was staying with his brother. Using the Snapchat information provided by J, law enforcement identified defendant as the buyer in the drug sale.

Defendant was indicted for multiple counts, including first-degree robbery, second-degree robbery, unlawful use of a weapon, and unauthorized use of a vehicle. During the ensuing jury trial, at the close of the state's case, defendant moved for a judgment of acquittal, arguing that the state failed to produce sufficient evidence of guilt on the robbery counts. The trial court denied the motion.

Although the state's primary position at trial was that defendant was the principal actor and the one who used the firearm, the state also pursued convictions based on accomplice liability.[2] In a discussion held outside the presence of the jury, the parties and the court agreed on jury instructions regarding accomplice liability. That agreement included an understanding that certain instructions on accomplice liability would apply to Counts 5 and 6 (charged under ORS 164.405(1)(b)), and certain instructions on accomplice liability would apply to the remainder of the charges. The parties reached that understanding based on what the law required for second-degree robbery under ORS 164.405(1)(b) (personally committing the crime while "aided by another person actually present"), and how accomplice liability functioned for the

---

[2] Accomplice liability is governed by ORS 161.155(2)(b), under which, "A person is criminally liable for the conduct of another person constituting a crime if[] *** [w]ith the intent to promote or facilitate the commission of the crime the person[] *** [a]ids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime."

remainder of the counts (permitting criminal liability even if defendant did not personally commit the crime). However, the jury instructions themselves did not make those distinctions. The jury received the following instructions without any indication as to the counts to which they applied:

> "CRIMINAL LIABILITY FOR CONDUCT OF ANOTHER PERSON
>
> "A person who is involved in committing a crime may be charged and convicted of that crime if, with the intent to promote or facilitate commission of the crime, that person: aids and abets or attempts to aid and abet someone in committing the crime.
>
> "AID OR ABET
>
> "A person aids or abets another person in the commission of a crime if the person:
>
> "(1)   With the intent to promote or make easier the commission of the crime,
>
> "(2)   Encourages, procures, advises, or assists, by act or advice, the planning or commission of the crime.
>
> "DEFINITIONS
>
> "* * * * *
>
> "Aid by another person actually present—means aided by a person who is close enough to be in a position to aid in exerting force upon the victim. It includes a person who is at hand, or within reach, sight, or call, or who presents an added threat to the alleged victim's safety."

The jury convicted defendant of second-degree robbery in Counts 5 and 6, on the basis that defendant committed robbery and was aided by another person actually present.[3] *See* ORS 164.405(1)(b); ORS 164.395(1). The verdict

---

[3] In the indictment, Count 5 alleged:

"As part of the same act and transaction and part of crimes that are of the same or similar character and a common scheme and plan as Counts 1-4: The defendant, on or about November 13, 2019, in Washington County, Oregon, did unlawfully and knowingly, while in the course of committing or attempting to commit theft and unauthorized use of a vehicle, use or threaten the immediate use of physical force upon [J], with the intent of compelling [J] to deliver the property, and being aided by another person actually present.

form asked specifically whether defendant used or threatened to use a firearm on all of the robbery counts; the jury found that he did not. After the jury was excused, defendant discussed with the court that the verdict might be inconsistent:

"THE COURT:  Quite frankly, *** it's interesting to me because they said not guilty as to the firearm.

"[DEFENSE COUNSEL]:  And it is a—I think it's something of an inconsistent verdict—

"* * * * *

"THE COURT:  Well, and we're not going to do sentencing today, so you've got plenty of time to file motions or whatever—

"* * * * *

"[DEFENSE COUNSEL]:  If there—if there is some sort of an inconsistent verdict, I think the motion *** has to be made before the jury is discharged, if I recollect correctly.

"THE COURT:  Yeah. And I don't think it's inconsistent, but that's something you can look into. You could always—

"[DEFENSE COUNSEL]:  Okay.

"THE COURT:  —file motions, whatever. You have plenty of time to do that because, again, I'm not sentencing him today. I just thought it was—I brought that up because, again, they found him guilty of those, and we both know that the State's theory—

"[DEFENSE COUNSEL]:  Right.

"THE COURT:  —was that a gun was used.

"[DEFENSE COUNSEL]:  Absolutely.

"THE COURT:  And then they said there wasn't a firearm.

"But they also found that he did not—as far as Unlawful Use of a Weapon charges—let me get to those. Not guilty.

---

"The State further alleges that the defendant used or threatened the use of a firearm."

Count 6 used identical language for acts against A.

"And, so, I think it's consistent with—obviously, there's several—

"[DEFENSE COUNSEL]:   It's an aid and abet.

"THE COURT:   Exactly. There are theories that the jury could have found that he didn't have the gun, that his brother or someone else had the gun.

"But, since he was aiding and abetting, he's guilty of the offense, but he's not guilty of using or possessing a firearm because they found that he didn't have the gun, that the co-defendant did. *** But, anyways—

"[DEFENSE COUNSEL]:   (Indiscernible)—

"THE COURT:   Something that you can look at, think about, whatever. Anyway, let's just—do you want [to schedule sentencing proceedings for] one week, two weeks, three weeks?"

Although in the subsequent sentencing proceeding, defendant referred to the verdict as "odd" and argued for a lesser sentence because the jury should not have been able to return the verdict it did, having acquitted on the firearm charges, defendant did not make any formal motion based on an assertion that the verdicts were inconsistent.

In his first and second assignments of error, defendant argues that the trial court erred when it did not enter judgments of acquittal on Counts 5 and 6. Defendant concedes that the state presented sufficient evidence for a jury to find that he was the principal actor in the robbery and that he used a firearm. But he argues that the verdict shows that the jury found that he did not engage in conduct constituting third-degree robbery under ORS 164.395 (*i.e.*, he did not "use[] or threaten[] the immediate use of physical force upon another person"), and as such, a trier of fact could not, as a matter of law, find him guilty of second-degree robbery under ORS 164.405(1)(b). We therefore understand defendant to argue that the trial court should have *sua sponte* entered a judgment of acquittal after the jury returned its verdict.

Defendant did not move for a judgment of acquittal after the verdict, so this argument is unpreserved. Our review is thus for plain error. *See* ORAP 5.45(1), (4)(b), (7). Plain error review is a two-step process. We must first

determine that the error is plain, which means that it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If those three requirements are met, we must then determine whether to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

We conclude that the trial court did not plainly err because we find no error apparent on the face of the record. Counts 5 and 6 charged that defendant committed the crime of second-degree robbery under the theory that defendant was aided by another person actually present. The state presented evidence from which a jury could find that defendant grabbed J from behind in a "choke hold * * * around his chest," held something to J's ribs that appeared to A to be a gun, demanded the drugs and personal property, ordered J and A out of the car, and left with the car. Those facts are sufficient to establish that defendant used or threated force on J and A in the course of committing theft and unauthorized use of a vehicle. The state also presented evidence from which a jury could find that defendant's brother was in the backseat of the car with him during the act, took a fanny pack from A, and drove the car away. Those facts are sufficient to establish that defendant's brother aided defendant in the theft and unauthorized use of a vehicle.

Notwithstanding the existence of those facts, defendant argues that the judgment of acquittal was still necessary because the jury acquitted defendant on all counts that involved use of a firearm. Defendant contends that the jury necessarily concluded that defendant was present at the robbery but was not the person who used or threatened the immediate use of physical force on the victim. As a result, defendant asserts, the jury must have determined that he was not directly liable, and his conviction must have been based on him aiding and abetting his brother in committing the crimes. Defendant therefore argues that because he did not actually engage in the conduct constituting third-degree robbery, a trier of fact could not, as a matter of law, find that he violated ORS 164.405(1)(b).

We agree with defendant that a person needs to directly engage in the conduct for criminal liability under ORS 164.405(1)(b). *State v. Rennells*, 213 Or App 423, 439, 162 P3d 1006 (2007) ("[O]nly a person who actually engages in the conduct constituting third-degree robbery *** 'violates ORS 164.395' for purposes of ORS 164.405(1)(b)."). However, we disagree that because the jury found that defendant did not use a firearm, the jury necessarily found that he did not personally engage in conduct constituting third-degree robbery.

On this record, the jury's acquittal on the firearm counts could have been because the jury found that the state did not prove beyond a reasonable doubt that a firearm was used in the robbery at all. A was the only witness to positively identify that a gun was used, and police never recovered a firearm matching the description that A provided. Although A testified that a gun was held to J's ribs, and A's description of the gun resembled one that defendant was holding in a photograph, the jury was free to disbelieve A's memory of the events.

In addition, the presence of a firearm was not essential to the convictions, because ORS 164.395 does not require the use of a dangerous or deadly weapon, only a use or threatened use of force. The jury could have determined that defendant violated ORS 164.395 when he grabbed J from behind before demanding the drugs and personal property. Then, the jury needed only find that defendant was "aided by another person actually present" to convict defendant of Counts 5 and 6. As we explained above, that finding was permissible on the record. Because there is more than one way to interpret the record in this case, the trial court did not plainly err when it did not enter judgments of acquittal on Counts 5 and 6.[4]

We reach a different conclusion about defendant's fourth assignment of error, under which defendant challenges the trial court's failure to give a concurrence instruction that required the jury to unanimously decide whether

---

[4] Indeed, if the jury found that a firearm was used and defendant aided and abetted his brother in the robbery, it is likely that they would have also convicted him of other counts.

defendant acted as the principal or accomplice. We agree with defendant that the trial court plainly erred when it did not give such an instruction. Because "the question of what must be included in a jury instruction is a question of law, and what was or was not included is determined readily by examining the instructions that were given[,] *** the only issue [before us] is whether the error[] w[as] 'obvious.'" *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000). We conclude that the error was obvious under *State v. Gaines*, 275 Or App 736, 365 P3d 1103 (2015), and exercise our discretion to correct it.

The Supreme Court has established:

> "[I]f the state seeks to hold a defendant liable either as the principal or as an aider and abettor and if a party requests an appropriate instruction, the trial court should instruct the jury that [the] jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other."

*State v. Phillips*, 354 Or 598, 606, 317 P3d 236 (2013). As the *Phillips* court recognized, "the elements necessary to prove liability as an aider and abettor ordinarily will not be coextensive with the elements necessary to prove liability as a principal." *Id*. In *Gaines*, we followed *Phillips* and decided that the trial court committed plain error when it failed to give a concurrence instruction after the jury was presented with both principal and accomplice theories of guilt on a second-degree robbery charge. 275 Or App at 748. We decide the same here.

We recognize that when the parties discussed the instructions with the court outside of the presence of the jury, it was clear to all involved that the "criminal liability for conduct of another person" and the "aid-or-abet" jury instructions applied only to Counts 1 through 4, 7, and 8, and that it was the "aid by another person" definition that applied to Counts 5 and 6. However, the final instructions to the jury did not make that distinction. Therefore, the jury could have used the "criminal liability for conduct of another person" and/or the "aid-or-abet" instruction to find defendant guilty of second-degree robbery in Counts 5 and 6. Thus, the jury was presented with both principal and

accomplice theories for Counts 5 and 6, and the jury instructions did not require the jurors to agree on a theory of liability. Under *Gaines*, that error is obvious. 275 Or App at 748 ("After *Phillips*, it is 'obvious' that, when the state advances competing theories of liability based on a defendant's acts as principal or as an aider-and-abettor[,] * * * a jury must be instructed that * * * jurors must agree that the defendant is liable under one theory or the other.").

Having found plain error, we exercise our discretion to correct it. *Ailes*, 312 Or at 382 n 6. We have exercised our discretion to correct the trial court's failure to deliver a jury-concurrence instruction on aiding-and-abetting liability in multiple cases. *See, e.g.*, *State v. Stowell*, 304 Or App 1, 2, 466 P3d 1009 (2020), *abrogated on other grounds by State v. Prophet*, 318 Or App 330, 507 P3d 735 (2022), and *abrogated on other grounds by State v. Shedrick*, 370 Or 255, 518 P3d 559 (2022); *State v. Miranda*, 290 Or App 741, 755, 417 P3d 480 (2018); *State v. Wright*, 281 Or App 399, 406, 383 P3d 385 (2016); *Gaines*, 275 Or App at 749. We follow suit and exercise our discretion here: "[B]ecause * * * defendant's convictions were for serious felonies, and the error was not harmless, the gravity of the error compel[s] us to exercise our discretion to correct the error." *Gaines*, 275 Or App at 750-51 (also noting that there was no "plausible strategic reason for defendant's failure to seek a concurrence instruction"); *see also Stowell*, 304 Or App at 7 (exercising discretion to correct plain error due to "lack of harmlessness, gravity of the error, and little chance that counsel made a strategic choice in failing to request instruction").

Because defendant's fourth assignment of error is dispositive, we do not address defendant's third assignment of error, which relates to other jury instructions, as the record may develop differently on remand.

Convictions on Counts 5 and 6 reversed and remanded; remanded for resentencing; otherwise affirmed.