No. 729 August 13, 2025 597

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE CEBALLOS,
*Defendant-Appellant.*

Marion County Circuit Court
22CR22824; A180797

Audrey J. Broyles, Judge.

Submitted September 27, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kate E. Morrow, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

HELLMAN, J.

Reversed and remanded.

_____
    * Lagesen, Chief Judge *vice* Mooney, Judge.

**HELLMAN, J.**

Defendant appeals a judgement of conviction for first degree robbery with a firearm, ORS 164.415 (Count 1), third degree assault with a firearm, ORS 163.165 (Count 2), and unlawful use of a weapon with a firearm ORS 166.220 (Count 3). He raises two assignments of error. First, he argues that the trial court plainly erred when it failed to instruct the jury that it was required to unanimously agree as to whether defendant committed first-degree robbery as the principal or the accomplice. Second, he argues that the trial court plainly erred when it did not merge the guilty verdicts on Counts 1 and 3 because those offenses arose out of a single criminal episode. We conclude that the trial court plainly erred when it did not give a jury concurrence instruction on the first-degree robbery charge. Accordingly, we reverse and remand on Count 1. Because the record may develop differently on remand, we do not reach defendant's second assignment of error.

In his first assignment of error, defendant acknowledges that he "did not ask the court to ensure jury concurrence on Count 1 by jury instruction or other means" and requests plain-error review.

> "Plain error review is a two-step process. We must first determine that the error is plain, which means that it is 'an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences.' *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If those three requirements are met, we must then determine whether to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991)."

*State v. Jones*, 333 Or App 797, 802-03, 553 P3d 1057 (2024).

During jury selection, the prosecutor discussed with the jury the theory of aiding and abetting, explaining that "it's anyone who encourages, procures, advises, or assists the planning or commission of a crime" and that "under aid and abet, somebody who aides or abets in the condition of the crime is still guilty of that same crime." Both parties referred to that theory in their opening statements. Specifically, the state did so in relation to the third-degree

assault charge, and defendant discussed the theory as a general principle that applied in the case.[1]

At trial, the victim testified that defendant and another person—who was wearing a mask—confronted him with guns and demanded his belongings. The victim further testified that, when he refused and tried to escape,

> "[defendant], with his accomplice, when I had one hand on the door, they proceeded to both grab me, throw me on the ground, and then after that, they threw me on the ground, *** both of them kind of like kicked me onto the ground because they kind of needed to beat me up for a little bit."

The victim also testified that one of the men took his wallet, which contained $1,000, that he photographed his injuries, reported the incident to police, and identified defendant as one of the assailants. The state also presented evidence that defendant later sent his brother a message that he had "1k" but that he "only kept 600."

A sergeant also testified that he found a handgun in defendant's car, that the handgun had defendant's fingerprints, and that it resembled the gun that the victim described seeing defendant use. The state also presented evidence that, after he was arrested and provided with *Miranda* warnings, defendant told police he was present at the robbery but that he did not participate.

After the state rested, defendant moved for a motion for judgment of acquittal. As relevant here, defendant argued that the state "has to prove that [defendant] intended to provoke *** to encourage the planning or commission of the crime." He further maintained that two other people were the principals, but "that doesn't mean that [defendant] was an accomplice under the definition of aiding and abetting."

---

[1] We observe that this portion of the prosecutor's opening statement is somewhat confusing. When only two people participate in an assault, one of those individuals cannot be criminally liable for that conduct as an accomplice to third-degree assault under ORS 163.165(1)(e). *State v. Merida-Medina*, 221 Or App 614, 619, 191 P3d 708 (2008), *rev den*, 345 Or 690 (2009) (holding that the person who aids the principal cannot be found guilty under a theory of accomplice liability because the "aid of another person is necessary for the crime to occur" (internal quotation marks omitted)). To the extent that the prosecutor was attempting to define the element of "aided by another person actually present" as "guilty of assault in the third degree for aiding and abetting in the injury of the victim," that description was legally incorrect.

In response, the state departed from the position that it took in its opening statement and argued:

"[T]he only aiding and abetting that it applies to would be the robbery in the first degree, and that's just because I don't believe that there was testimony as to who was the one who actually stole the wallet. And so it has to do with the theft component of that charge."

The state explained that the victim's testimony made clear that the two assailants "were both acting in concert to assault him, one of them took his wallet, and then they ran away." As a result, the state argued that "a reasonable juror could find that, if the defendant was not the one that took the wallet, he definitely aided and abetted in taking the wallet and gaining the proceeds from that afterwards."

The trial court denied defendant's motion, reasoning that "the testimony of the victim is just replete and consistent *** that it was very much a 50/50 endeavor" and that both assailants "had firearms."

In its closing argument, the state argued that there was "absolutely no question" that the victim was "assaulted and robbed at gunpoint." The state highlighted the evidence that, in its view, proved that defendant was one of the men who committed the crimes, including that the victim was "absolutely positive 1000 percent that the defendant was one of those people." The state did not explicitly argue that defendant took the victim's wallet; instead, the state focused its argument on rebutting defendant's narrative that he was a mere bystander while others committed the crimes. The state also quoted the victim's testimony that both men—one of whom was defendant—"went at it 50/50. They—they dragged me down. They punched me. They kicked me, and then *they stole my wallet.*" (Emphasis added.)

In his closing argument, defendant urged the jury to find that the state had not met its burden to prove his guilt beyond a reasonable doubt. Specifically, defendant argued that "[r]egarding the *** robberies and the allegations here, there is an aid and abet component to it" and told the jury that they would be "given a jury instruction that defines aiding and abetting."

In rebuttal, the state urged the jury to reject defendant's theory that he did not participate in the assault or the robbery:

> "[T]he only logical conclusion is what I've represented to you, is that the defendant robbed [the victim] at gunpoint, *took his wallet with the money* in it, then sent the text message to his brother regarding the money, where the brother is asking for some of that, and then three days later is found with the same gun that matches the description that [the victim] gave."

(Emphasis added.)

The trial court later instructed the jury, in relevant part:

> "A person aids or abets another person in the commission of a crime if the person, with the intent to promote or make easier the commission of the crime, encourages, procures, advises, or assists by act or advice the planning or commission of the crime."

The trial court provided that instruction within the general instructions and did not associate it with any particular charge. The jury convicted defendant on all counts. This appeal followed.

"[T]he question of what must be included in a jury instruction is a question of law, and what was or was not included is determined readily by examining the instructions that were given. Therefore, the only issue [before us] is whether the error[ ] [was] 'obvious.'" *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000).

Here, the state presented two theories of criminal liability for first-degree robbery: that defendant was principally liable because he took the victim's wallet during the assault or that defendant was liable for aiding and abetting the other assailant, who took defendant's wallet. The evidence, the state's arguments, and the jury instructions allowed the jury to find defendant guilty of the robbery as either a principal or an accomplice.

Because the court did not instruct the jury that it must agree on a theory of liability for first-degree robbery, we

conclude that the error is obvious. *See State v. Gaines*, 275 Or App 736, 748, 365 P3d 1103 (2015) ("After [*State v. Phillips*, 354 Or 598, 317 P3d 236 (2013),] it is 'obvious' that, when the state advances competing theories of liability based on a defendant's acts as principal or as an aider-and-abettor[,] *** a jury must be instructed that *** jurors must agree that the defendant is liable under one theory or the other.").

As we have done previously, we exercise our discretion to correct the plain error. *See Jones*, 333 Or App at 806 (collecting cases in which we exercised discretion to correct a plain error regarding the failure to give a jury concurrence instruction). Here, as in *Gaines*, defendant had no "plausible strategic reason for [failing] to seek a concurrence instruction." 275 Or App at 750. Consequently, "because *** defendant's conviction [was] for serious felonies, and the error was not harmless, the gravity of the error compel[s] us to exercise our discretion to correct the error." *Id.*; *see also State v. Stowell*, 304 Or App 1, 7, 466 P3d 1009 (2020), *abrogated on other grounds by State v. Prophet*, 318 Or App 330, 507 P3d 735 (2022), and *abrogated on other ground by State v. Shedrick*, 370 Or 255, 518 P3d 559 (2022) (exercising our discretion to correct the plain error due to "lack of harmlessness, gravity of the error, and little chance that counsel made a strategic choice in failing to request instruction").

Because we reverse and remand on Count 1, we do not reach defendant's second assignment of error that the trial court plainly erred when it failed to merge the guilty verdict on Count 3 with the guilty verdict on Count 1.

Reversed and remanded.